They please the court, the government sought an appeal in this case to correct a sentence in the United States v. Edwards on two grounds. First, that a truncated application of the sentencing guidelines, particularly sentencing guideline provision 2F1.1, led to an incorrect application of the law and should be reversed on that ground. Secondly, in the event that the court does not believe it has jurisdiction to reverse on that ground, the government would seek a reversal based upon the reasonableness standard articulated by the Supreme Court in the United States v. Booker. Let me return to that first argument. As the court knows, in this case, the plea agreement was signed and filed before the Supreme Court's decision in Blakely v. Washington, a State Supreme Court case. The sentencing occurred post-Blakely but pre-Booker. And this court in United States v. Ammaline at that point applied the Blakely rule to the federal sentencing guidelines. That led the district court to make a number of findings that the government disagreed with at the time of the sentencing, believed were legally incorrect, and led to a sentence of only seven months of home arrest in a bankruptcy fraud and bank fraud case where we believe the loss as substantiated by the pre-sentence report and the factual proffer made by the government at the time of change of plea showed a loss of at least around a half a million dollars. So the government believed that that sentence was incorrect as a matter of law, believed that the court failed to make findings based upon what the defendant had said at the time of the change of plea colloquy, the admissions that he had made, and that that should have led, even under a Blakely standard, to a different sentence. The government also then believed and said so in various filings that the principles in 3553A, that any sentence should minimize disparity among similarly situated defendants, that sentences need to promote respect for the law, they need to deter criminal conduct, that none of those sentencing, statutory sentencing goals would be advanced by the sort of sentence that was imposed by the district court. We specifically said that the low end of the guideline range as calculated in the PSR, 27 months, was at minimum the only thing that we believed would advance those statutory purposes of punishment. And as you know, the court imposed it. But what is it that you want? Do you want a full remand for resentencing? Is that what you're asking for, rather than just an Ameline remand or what? Well, certainly we believe that there are two avenues for the court to take, and I believe this court could frankly take both. The first one would be a full remand based upon the fact that the guidelines were incorrectly applied under 3742B. But secondly, this court in the post-Booker era has yet to make any kind of pronouncement on what constitutes a reasonable sentence. Counsel, tell me if I've got the facts right on this. This guy stole at least a half a million dollars. He's gotten caught once before, and he gets no time to serve? That's correct. No incarceration. Did I get it right? You did. This was bank fraud and bankruptcy fraud. And you're correct, Your Honor, that this defendant is a recidivist. He was convicted in the state of Arizona, owed a substantial restitution judgment to the FDIC. Why did the judge think he turned his life around and wouldn't do it again? Well, I think in fairness to the district court, the district court felt somewhat hemmed in by Ameline. But as we tried to make clear at that point. Which Ameline was that, the first? Okay, that's the initial Ameline opinion. I can't remember if that's a Judge Gould opinion. But that's the initial, that's the pre-Blakely, post-Ameline, non-NBank opinion. Right. Okay. But I think it's fair to say that in this case, the chief judge in the District of Montana felt hemmed in a bit by Blakely. We tried to persuade him that there was a stipulation that was adequate. And it's very clear that this seven-month sentence is not a reasonable sentence. Seven months to serve or seven months at home? Home arrest. Home arrest. There was no incarceration here at all. And the sentence is, in our view, plainly unreasonable under the factors set forth in 3553A. And I frankly believe that the court should say that based upon the record. The record is very complete here, as you can see from the excerpts. There isn't any doubt about what happened. The reason I ask you this is I can't figure out why the district judge did it. And in order to decide whether it's reasonable or not, I'd like to understand better why he did it. Well, I think the answer is he believed that although the government had argued at the time of the sentencing that our offer of proof, which was voluminous, and said here's what the defendant did in Arizona, here's what the defendant did in terms of criminal conduct in Montana, both in the bankruptcy court and in his false statements on bank applications. And we believe that what he said at the time of the change of plea hearing, Your Honor, dictates the fact that there's going to be a substantial enhancement for loss associated with that fraudulent conduct. And the judge, I think, decided, well, I don't believe that given Blakely that that is adequate. I think the district court was incorrect. That's why we took the appeal under 3742B1 and B2. Again, the factual record is so complete here that unless this court believes that the offer of proof doesn't establish criminal conduct that demands far more than a sentence of seven months of home arrest, I don't think that there's anything about the sentence in this case. There isn't anything about it. Well, what confused me about that was if the judge felt hemmed in and bound by the guidelines, didn't this fellow get a below-guideline sentence? The judge felt hemmed in by Blakely v. Washington and the Ammoline opinion and felt that if he didn't have jury findings or a stipulation with the government based upon, and again, pre-Blakely plea colloquy. That's a sentence on the basis of facts found by the jury. That's right. And he said, okay, I understand I have an offer of proof, filed a record, which is in the excerpts that I filed in this case. He said, I understand that the defendant, that the government read this into the record and that the defendant knew what the government alleged and didn't make all sorts of different revisions to that proof. It's in the pre-sentence report. It's in the pre-sentence report. But it is fair to say that the defendant at the time of that change of plea hearing couldn't have contemplated Blakely, couldn't have contemplated Ammoline, and I think the Court may have felt, you know, maybe there isn't a true waiver here based upon the stipulation. Why have we just, since the district court thought that it was bound by, bound just by what the jury found, and it turns out now that the district court wasn't, why can't we simply remand it pursuant to Ammoline and he would then be free to do a re-sentencing, wouldn't he? Yeah. And that's our first request. But I think the next question is, there isn't any definition to the question. Well, why would we have to reach that now if it has to go back anyway? You don't have to reach it now, but I think there is a lack of clarity in terms of what constitutes reasonableness and the facts in this case. Well, you have to wait until you see a sentence that you think is unreasonable before you can argue that. I mean, you don't know what the sentence is going to be. No. Although I think I'm arguing that the sentence imposed at this initial sentencing was unreasonable and this court could add, I think, a great deal of context to what constitutes reasonableness. Well, yeah. It's like a little dicta there. But we certainly favor a full remand, but believe that the court has a tough decision on whether to speak on the question of reasonableness because seven months of home arrest on this record is not reasonable. Now, last thing I want to mention for the court's benefit, evidently this court in United States v. DuPas late last month dealt with the ex-prospecto clause and due process arguments that Mr. Rhodes has made in his brief. It's the government's view that this court essentially adopts the argument made in the reply brief that I filed in this case and believe that those arguments really have been fully vetted by the DuPas panel, and the DuPas panel has fully rejected the arguments made on Mr. Edwards' behalf by Mr. Rhodes in this case. And with that, I'll reserve the balance of my time. Thank you. Good morning. I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana. I represent Duncan Edwards. Going to that last issue that was raised, why can't the court simply remand for a post-Booker advisory sentence, the problem with that is before the court can do that, it would have to find that there's plain error. The government didn't oppose the sentence here on the basis that the guidelines should be advisory. It opposed the sentence on the basis that the Judge Malloy sentence didn't advance 3553A factors and that somehow Mr. Edwards stipulated to the enhancements that the government was seeking. So the issue of advisory guidelines wasn't in play and wasn't raised by the government and, therefore, the court can't simply, as a matter of law, remand on that basis. And I think it's akin to the Ameline situation where there was a dispute in the district court about whether the enhancements should apply, but there was never a dispute in the district court about the Sixth Amendment and, therefore, on review at this court level, the standard review was plain error. So I think that has to be the standard here. If we thought that the sentence was unreasonable, we could vacate it. Is that right? Yes, but I think there has to be plain error review first because you're taking a ---- The government did object to the sentence. Yes, they objected that it didn't advance the factors in 3553A. If we agreed that it did not advance 3553 factors and was unreasonable, we could vacate it, couldn't we? I think the court would have to do so pursuant to plain error review, but under that rubric, it could. Why, if it was objected to and was unreasonable? Because the reasonable standard derives from the Book of Remedy decision in Justice Breyer's majority decision, and that didn't exist at the time, and so in order to apply that ---- But 3553 did. Correct, but the district court, as I agree with Mr. Mercer, the district court applied the guidelines using Mr. Mercer's phrase, hemmed in by Blakely. Now lay it out for me. I just don't understand how a man can steal more than a half million dollars, be a recidivist, he's done it before, and get no time to serve, especially when the guideline sentence was more than that. Well, first of all, the guideline sentence was one to seven months under Ammaline, the initial Ammaline decision. If you don't count the half million freedom, same as if he'd stolen $10, right? Correct. Second, he didn't steal a half million dollars. What happened was ---- More than 800, as I understand. He filed for bankruptcy, and he didn't disclose that he had stock options in a privately held company. Eventually, those stock options were disclosed, and eventually they were liquidated, and almost all the proceeds went to the bankruptcy trustee. So it wasn't as though he stole the money, and it wasn't as though he somehow prevented the bankruptcy trustee from getting it. So I think that's one factor that influenced Judge Millay's decision. You mean that he did his best to steal it, but he got caught? The bottom line is nobody was out any money at the end of the day. So that's why I say stealing isn't the right ---- I don't think that's the right answer. I guess what I don't understand ---- okay, but I guess what I don't understand is why there's no plain error here. Because the ---- everybody thought at the time that because of our original panel decision in Ammaline that the judge had to ---- was limited in what he could sentence based on what the jury had found, which was very low. And we now know that that isn't true. So why isn't that plain error? Well, applying the plain error test, I agree there's error that is plain, but the hang-up, the rub is at the substantial rights. And first of all, it's debatable whether the government can even benefit from plain error review, and they recognize that in their reply brief. But focused on the substantial rights test, the issue according to the government is that advocated in Ammaline en banc is that it would have to show that a different sentence would result. And it clearly can't do that on this record. It hasn't even tried to do it. So then the question becomes if you don't want to take their own standard they advocated, but instead take the more general standard, there's a reasonable probability that for the error a different sentence would result, that hasn't been met either. Well, you seem to be trying to concede that we have to reach the reasonableness point. And if you concede that we have to reach that, then I guess I'm having trouble seeing how we can hold that this is reasonable. Well, the other part of the fact, the evidence that was before Judge Molloy was this individual's role in the community. He's the building inspector for a medium-sized city in Montana, the city of Livingston, which I believe has approximately 5,000 people that's undergoing a rapid boom in growth, population growth. And his boss came in and explained how valuable he was and how it basically crippled the development in Livingston if this person with his skills and knowledge and experience was no longer available. And if you review the sentencing transcript, clearly Judge Molloy took that into consideration. If we conclude that the sentence was unreasonable and do what you appear to be asking us to do, wouldn't that hurt your client? Yeah. If the court's going to choose between the two, obviously we would just have it. If it's going back, we want it back just under the post-booker sentencing scheme. That would be our choice. Without a determination of reasonableness. Correct. And then we can advocate to the court yet again what the sentence should be under 3553A. And if the court's putting us in a position to choose, no doubt that's our choice. I want to touch upon the Dupas case. The government believes. Aren't you in a better position to follow that alternative right now for us not to reach the reasonableness question? Because if we do, we might bind the judge that he has to go higher. What I hear the court saying today, I would prefer if it's going to say it's unreasonable and not even reach that decision, just simply send it back. Okay. I also want to touch on the Dupas case. The government believes that that defeats the ex post facto challenge. Just to brief the court quickly, the ex post facto argument is that Mr. Edwards should be sentenced under the law that existed at the time that he was sentenced. And at that time, it was basically Blakely I's guidelines. And now to retroactively apply the Booker decision would violate due process. Even though Blakely was a state of Washington decision and the guidelines are federal and the Supreme Court never said, in fact, it said the opposite that the guidelines were mandatory and therefore unconstitutional without jury trial and beyond a reasonable doubt. You're saying that he should be sentenced on the basis of jury trial and beyond a reasonable doubt to prove the amount of loss. Yes, because that was the law of this circuit at the time he was sentenced, September of 2004. You're talking about decisional law that was mistaken. But he had a reasonable reliance on that law. I thought the only time that he could reasonably rely on what the law was was when he hid the money from the bankruptcy trustee. If you want to go back to that point, he had the right to rely on law that is constitutional. And constitutional law at that time, as we now know, would not permit mandatory guidelines that permitted a district court judge to enhance a sentence based on his own fact-finding. So you're saying he had a constitutional right when he hid the assets from the bankruptcy trustee, somewhere between a half million and 800,000, to say, aha, I know that the Ninth Circuit will not allow me to be sentenced if I get caught for any more than if I stole $1. Well, it's not the Ninth Circuit, it's the Sixth Amendment. And second, he could be sentenced more. It's simply that's a jury function, not a judge fact-finding function. So it's not as though it forecloses the enhanced sentence. It's just the methodology, the constitutional process that gets there. But going to distinguishing Dupas. Dupas said basically that judicial law, as you just recognized, Judge Kleinfeld, can't result in this ex post facto defeat or ex post facto protection. But if you look at what the Supreme Court did in Booker in the remedy decision, it basically said there's a savings provision in the guidelines. It said that if Congress knew about this Sixth Amendment problem, it wouldn't blankleyize the guidelines. It wouldn't get rid of the guidelines. But what it would simply do is say they are no longer mandatory, which is what the court did by excising two statutory provisions. And therefore, that wasn't a judicial decision. It was a legislative function. The Supreme Court basically read into the guidelines a savings clause. And Dupas looks at this situation as though it was purely a judicial act. And I think it wasn't. It was an act of the legislature. The Supreme Court read into the Sentencing Reform Act a savings clause that Congress intended. And that's clear when you read the Booker-Brier decision. And because of that, Dupas simply doesn't address that issue. And we think that issue, the fact that it was a legislative decision, would prevent Mr. Edwards from being exposed to judicial fact-finding that could enhance his sentence. Okay. Thank you. Thank you. Mr. Reiser. I want to follow up first on the notion that Edwards is too valuable to be incarcerated. This is, of course, what runs contrary to that position, is that the guidelines and the statutes here dictate a number of principles, including promoting respect for the law and deterring conduct, which we certainly don't have with a sentence like this. Mr. Rhodes also said no individual or entity was out of money. Well, of course, by not disclosing those stock options, that means that there were a number of people who were creditors in the bankruptcy proceeding that could not benefit from that. So I want to clarify that. I think at the heart of his argument is a question for this court on whether the government can seek or whether this court can really say that the government can benefit from that plain air standard. You've heard the position of the defender, which is the government can't get plain air review. And I do cite two cases that have been invoked by the federal defender in the past, on the bottom of page 13 of my reply brief. And if the court is going to send this back without reaching the reasonableness standard, then I think the court almost has to address the fact that the government can, in at least the Booker context, benefit from a plain air review standard and that it's not just left for a district court opinion that the defendant thinks is incorrect. Well, at least the district court could consider that. Okay. Now, the other thing I wanted to cite, too, is page 12 of the government's opening brief, where I cite the language in the Booker opinion that reads, thus Fanfan's sentence does not violate the Sixth Amendment. Nonetheless, the government may seek resentencing under the system set forth in today's opinions. And I think you hear the defendant saying that limits this Court's review to reasonableness. The remedy that's set forth by Justice Breyer is one on a reasonableness standard. And, again, as I've noted earlier, I think that we can avoid an in-bank petition and further deliberations if this Court not only deals with plain air but also with reasonableness. Let me ask you one question unrelated to the case. You are the U.S. attorney. This case came up, was sentenced after our Ameline panel decision. How many more cases are there in the pipeline that raise these issues? Are we getting to the end of them in Montana? I know we have a pending case, not fully briefed, United States v. Schlake. And I don't believe that we have other pre-Blakely pleas, post-Blakely, pre-Booker sentences that we've challenged. Counsel, we're getting there. Have I got this right? At the change of plea proceeding, the government recited that $445,000 was the amount realized from a sale that was the value of the options that were not disclosed to the trustee. And then the defendant was asked, did you listen? Is there anything that you disagree with or that you think is wrong? And the defendant said no. You are correct. I think the exact passage in the transcript indicates that Mr. Rhodes, at that point, made some sort of an argument that I don't, I can't recall for the court at this point the precise language, but the defendant did not object to this offer of proof, which was filed a record and then read into the record at the change of plea hearing. The difference between the $445,000 that he admitted to in the change of plea and the pre-sentence report, you will see that the probation office, and we agreed with this, said that's just speaking to the value of the options that the defendant failed to disclose. The defendant also then made a number of false statements to banks in Montana that he has entered a guilty plea on one of the bank fraud counts, and he didn't disclose the fact that he was a felon, that he owed a restitution judgment. All of that is part of the pre-sentence report, and that's how, that's the distinction between the $445,000 in options and I think, I believe, the $636,000. Okay. We're way over time, and it was a yes or no answer, so thank you. Thank you. The case just argued is submitted for decision. We'll hear that.
judges: Schroeder, Alarcon, Kleinfeld